# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

MATTHEW CHEATHAM, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

VIRGINIA COLLEGE, LLC and EDUCATION CORPORATION OF AMERICA,

    Defendants.

Civil Action No.
1:19-cv-04481-SDG

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Compel Individual Arbitration, to Deny Class Arbitration, and to Dismiss Plaintiff's Class Action Claims [ECF 3]. For the reasons stated below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

### I.  BACKGROUND

> "This is another arbitration dispute in which the parties are litigating whether or not they should be litigating. The familiar scenario is that the parties agree in writing to arbitrate any disputes between them, but then one party files a lawsuit taking the position that the agreement to arbitrate is inapplicable, invalid, or unenforceable for one reason or another."

*Terminix Int'l Co., LP v. Palmer Ranch L.P.*, 432 F.3d 1327 (11th Cir. 2005) (quoting *Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1026 (11th Cir. 2003)).

Plaintiff Matthew Cheatham initiated this action on August 26, 2019 in the State Court of Gwinnett County, Georgia.[1] He alleges that Defendants "operated and ran one of the largest for-profit colleges in the United States."[2] Defendant Education Corporation of America (ECA) allegedly operates Defendant Virginia College, LLC (the College).[3] Cheatham asserts that the College's accreditation was suspended on December 4, 2018, which means (as Cheatham contends) his coursework will not qualify for transfer credit.[4] Cheatham further alleges that former students now "possess degrees without value" and current students have purportedly made tuition payments that "provided them no benefit."[5]

Cheatham seeks to represent each of these putative classes (former students and current students).[6] His Complaint specifically alleges that any arbitration agreements he entered into with Defendants are unenforceable because of 2016

---

[1]   ECF 2-1.

[2]   *Id.* ¶ 1.

[3]   *Id.* ¶ 2. *Compare with* ECF 2-2 (Decl. of Kellie Kennedy), ¶ 1 (asserting ECA is the "parent company" of the College).

[4]   ECF 2-1, ¶ 4.

[5]   *Id.* ¶¶ 6–7.

[6]   *Id.* ¶ 35.

Department of Education (DoE) regulations that prohibit schools participating in the federal student loan program from entering into (1) arbitration agreements with students and (2) agreements that prevent students from bringing class action suits.[7] Cheatham further contends that, under these regulations, schools cannot "rely on an existing arbitration agreement to force an individual or class action out of court, even if the agreement was entered into prior to the rule's effective date."[8] He asserts causes of action for negligence, breach of contract, and unjust enrichment.[9]

On October 4, 2019, the College removed the action to this Court based on the Class Action Fairness Act, diversity jurisdiction, and federal question jurisdiction.[10] On October 8, 2019, Defendants answered the Complaint and filed their motion to compel arbitration.[11] The motion to compel asserts that agreements to arbitrate are valid and enforceable under the Federal Arbitration Act (FAA) and that all of the FAA's prerequisites to compelling arbitration have been satisfied.[12]

---

[7]  *Id.* ¶ 81. *See generally id.* ¶¶ 81–86 (citing 34 C.F.R. §§ 685.206, 685.222, 685.300).
[8]  ECF 2-1, ¶¶ 85–86 (citing 34 C.F.R. § 685.300(e)(3), (f)(3)).
[9]  ECF 2-1, at 9–12.
[10] ECF 2.
[11] ECF 1; ECF 3.
[12] ECF 3, at 4–9.

Defendants also contend that the Court should deny class arbitration and dismiss Cheatham's class claims because the parties did not agree to arbitrate such claims.[13] Finally, Defendants argue that the Department of Education regulations on which Cheatham relies do not prevent enforcement of the parties' arbitration agreements.[14] On October 22, Cheatham opposed the motion to compel.[15] On November 5, Defendants filed a reply in support of the motion.[16] On November 14, Cheatham filed a notice of supplemental authority.[17] On November 18, Defendants filed a notice of supplemental authority.[18]

## II. CONTRACT TERMS

Cheatham's Complaint did not attach copies of any contracts between the parties and does not identify when the contract (or contracts) on which his claims

---

[13]   *Id.* at 12–13.

[14]   *Id.* at 14–21.

[15]   ECF 9.

[16]   ECF 11.

[17]   ECF 15. Instead of providing authority to supplement arguments Cheatham had already presented, the filing was actually an improper sur-reply brief that responded to arguments raised in Defendants' reply brief.

[18]   ECF 16 (identifying *Chamber of Com. v. U.S. Dep't of Labor*, 885 F.3d 360 (5th Cir. 2018) and *Thrivent Fin. for Lutherans v. Acosta*, No. 16-cv-03289-SRN-DTS, 2017 WL 5135552 (D. Minn. Nov. 3, 2017)). The notice did not point to court rulings that were only made available after the briefing had closed. Rather, the cited opinions were available before Defendants filed their opening brief.

are based was executed. However, Defendants' motion to compel attached (1) an Arbitration Policy and an Enrollment and Tuition Agreement both executed by Cheatham on April 18, 2011 (collectively, the 2011 Agreements);[19] (2) an Arbitration Policy and an Enrollment and Tuition Agreement both executed by Cheatham on December 14, 2016 (collectively, the 2016 Agreements);[20] and (3) an Arbitration Policy and an Enrollment and Tuition Agreement both executed by Cheatham on September 12, 2017 (collectively, the 2017 Agreements).[21]

The arbitration provisions in the 2017 Agreements state:

> **ARBITRATION:** Any claim, controversy or dispute arising out of or relating to this Contract or any alleged breach, violation or default of this Contract, together with all other claims, controversies or disputes of any

---

[19] ECF 3-3, at 28, 29–32.

[20] *Id.* at 34, 35–38.

[21] *Id.* at 39, 40–45.

Cheatham does not contest the authenticity of these documents. Accordingly, the Court may appropriately consider them without converting Defendants' motion into one for summary judgment. *Adamson v. Poorter*, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) ("[A] document attached to the pleadings as an exhibit may be considered if it is central to the plaintiff's claim and the authenticity of the document is not challenged.") (citations omitted); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("Our Rule 12(b)(6) decisions have adopted the 'incorporation by reference' doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.") (citations omitted).

nature whatsoever, including but not limited to all claims based in tort, fraud, contract, equity, state law, and/ or federal law, arising out of or in relation to the Student's enrollment and participation in courses at the college, shall, upon notice by either party to the other party, be resolved and settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. Such arbitration shall take place in Birmingham, Alabama. The parties agree that any dispute subject to arbitration shall not be adjudicated as a class action or a consolidated class arbitration proceeding either in court or under the rules of the American Arbitration Association. The right of any party to pursue a class action for any dispute subject to arbitration shall be waived to the fullest extent permitted by law. The arbitrator's decision and award shall be final, binding on the parties, and non-appealable, and may be entered in any court of competent jurisdiction to enforce it. The parties shall, respectively, pay any expenses incurred as American Arbitration Association fees, administrative fees, arbitrator fees, mediation fees, hearing fees, and postponement/cancellation fees in accordance with the rules and procedures adopted by the American Arbitration Association. Notwithstanding the provisions of this Arbitration Provision, in the event a breach, violation or default of this Contract (or any of its terms) is alleged, the College shall have the option to seek injunctive relief in any court of competent jurisdiction barring further breach or violation of this Contract pending arbitration. In the event any provision of this binding Arbitration Provision is held to be invalid, illegal or unenforceable for any reason and in any respect, such invalidity, illegality, or unenforceability shall in no event affect, prejudice or disturb the validity of the remainder of this Arbitration Provision, which shall be and remain in full force and effect, enforceable in accordance with its terms. **BY SIGNING THIS CONTRACT,**

> **THE STUDENT (AND, IF APPLICABLE, HIS/HER PARENT OR LEGAL GUARDIAN) GIVE UP THE RIGHT TO GO TO COURT AND THE RIGHT TO TRIAL BY JURY AND EXPRESSLY ACKNOWLEDGE AND UNDERSTAND THAT HIS, HER OR THEIR RIGHTS AND REMEDIES WILL BE DETERMINED BY AN ARBITRATOR AND NOT BY A JUDGE OR JURY. THE PARTIES UNDERSTAND THAT A DETERMINATION BY AN ARBITRATOR IS AS ENFORCEABLE AS ANY ORDER AND IS SUBJECT TO VERY LIMITED REVIEW BY A COURT.**[22]

Each of the three sets of agreements (2011, 2016, and 2017) is governed by Alabama law and requires arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association.[23] The 2016 and 2017 Agreements contain express class action and consolidated class arbitration waivers,[24] while the 2011 Agreements do not.[25] The 2016 and 2017 Agreements also require arbitration

---

[22] ECF 3-3, at 41 ¶ 10 (emphasis added). *See also id.* at 39.

[23] *Id.* at 28 (2011 Arbitration Policy); *id.* at 30 (2011 Tuition Agreement ¶ 10 Arbitration); *id.* at 31 (2011 Tuition Agreement ¶ 17 Governing Law); *id.* at 34 (2016 Arbitration Policy); *id.* at 36 (2016 Tuition Agreement ¶ 10 Arbitration); *id.* at 37 (2016 Tuition Agreement ¶ 17 Governing Law); *id.* at 39 (2017 Arbitration Policy); *id.* at 41 (2017 Tuition Agreement ¶ 10 Arbitration); *id.* at 43 (2017 Tuition Agreement ¶ 16 Governing Law).

[24] *Id.* at 34 (2016 Arbitration Policy); *id.* at 36 ¶ 10 (2016 Tuition Agreement); *id.* at 39 (2017 Arbitration Policy); *id.* at 41 ¶ 10 (2017 Tuition Agreement).

[25] *Id.* at 28 (2011 Arbitration Policy); *id.* at 30 ¶ 10 (2011 Tuition Agreement).

of tort claims.[26] The 2017 Agreements expressly require any arbitration to take place in Birmingham, Alabama.[27]

### III. APPLICABLE LEGAL STANDARDS

The FAA reflects the strong federal policy in favor of arbitration. *Howsam v Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (noting that the Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements'") (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). *See also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) ("The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption — 'a national policy' — in favor of arbitration.") (citations omitted). That said, parties cannot be required to submit a dispute to arbitration unless they have agreed to do so. The Supreme Court has made clear that "the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (citations omitted). *See also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute

---

[26] *Id.* at 34 (2016 Arbitration Policy); *id.* at 36 ¶ 10 (2016 Tuition Agreement); *id.* at 39 (2017 Arbitration Policy); *id.* at 41 ¶ 10 (2017 Tuition Agreement).

[27] *Id.* at 41 ¶ 10 (emphasis in original).

only where the court is satisfied that the parties agreed to arbitrate *that dispute*.") (citations omitted); *Howsam*, 537 U.S. at 83; *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Further, unless parties have agreed otherwise, questions of arbitrability— *i.e.*, whether a particular dispute must be decided by a court or an arbitrator—are to be made by the court. *First Options*, 514 U.S. at 943; *AT&T Techs.*, 475 U.S. at 649. *See also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019) ("The [Federal Arbitration] Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.") (citations omitted). There must be clear and unmistakable evidence that the parties intended for the arbitrator, rather than the court, to determine arbitrability. *Howsam*, 537 U.S. at 83 ("The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'") (quoting *AT&T Techs.*, 475 U.S. at 649). Where the parties have done so, arbitrability has been "delegated."

## IV.  DISCUSSION

The initial question the Court must address is whether it or an arbitrator must rule on Cheatham's attack on the enforceability of the arbitration agreements

entered into by the parties. The Court concludes that this is a matter the parties delegated to the arbitrator.

### a. The parties entered valid agreements to arbitrate.

In general, it is for the Court to decide disputes about contract formation. *Granite Rock*, 561 U.S. at 296. But here, the parties' disagreement is not about whether valid contracts were created in the first place. It is clear that the parties entered into valid, broad agreements to arbitrate any disputes related to Cheatham's enrollment in and attendance at the College. Every iteration of the Arbitration Policy and Tuition Agreement signed by Cheatham contained the following language:

> Any claim, controversy or dispute arising out of or relating to this Contract or any alleged breach, violation or default of this Contract, ***together with all other claims, controversies or disputes of any nature whatsoever [ . . . ] arising out of or in relation to the Student's enrollment and participation in courses at the College***, shall . . . be resolved and settled by binding arbitration . . . .[28]

No party contends that these contracts were never formed. In fact, while he does not specify on which agreement his claims are based, Cheatham asserts a cause of

---

[28] ECF 3-3, at 28, 30, 34, 36, 39, 41.

action for breach of contract.[29] He affirmatively alleges that he (and members of the putative classes he seeks to represent) entered into contracts with Defendants and that Defendants breached those contracts by, among other things, failing to maintain the College's accreditation.[30]

Nor is there any dispute that all of Cheatham's claims are covered by the relevant arbitration provisions—unless there is something (such as the DoE regulations) that prohibits their enforcement.[31] Cheatham's argument is that the DoE regulations, which became effective after the parties had formed the Agreements, made the arbitration and class waiver provisions unenforceable and require the College to amend the agreements or "notify the students that they will not enforce the agreement."[32] The crucial question is whether the parties delegated

---

[29]   ECF 2-1, ¶¶ 66–75 (Count II).

[30]   *Id.* ¶¶ 67, 70.

[31]   *See, e.g.,* ECF 9, at 1–2 ("Plaintiff's Complaint specifically attacked the enforceability of the arbitration provision of the Enrollment Agreement as unenforceable due to Borrower Defense regulations promulgated by the Department of Education . . . .").

Although Cheatham asserts in the alternative that the arbitration and class waiver provisions are not enforceable because they are unconscionable, this argument is also based on the contention that the provisions are unenforceable because they conflict with the DoE regulations. *Id.* at 24.

[32]   ECF 2-1, ¶¶ 85–86. *See also, e.g., id.* ¶ 81 ("The Department of Education entered a rule in 2016 which was in effect as of October 16, 2018 prohibiting schools participating in the federal student loan program from entering into certain

such determinations about enforceability to an arbitrator or if they must be decided by the Court. The parties' contracts make clear that these determinations have been delegated.

### b. The parties' agreements delegate to the arbitrator questions of arbitrability.

The Agreements all expressly incorporate the American Arbitration Association's (AAA) Commercial Arbitration Rules (the Rules).[33] Those Rules specifically delegate to the arbitrator questions of arbitrability:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or *validity* of the arbitration agreement or to the arbitrability of any claim or counterclaim.[34]

---

pre-dispute arbitration agreements with students or agreements that purport to waive students' rights to bring class actions."); *id.* ¶ 86 ("The school must either amend the agreement or notify the students that they will not enforce the agreement.") (citing 34 C.F.R. § 685.300(e)(3), (f)(3)); ECF 15, at 1–2 (indicating relevant rules became effective in October 2018).

[33] ECF 3-3, at 28 (2011 Arbitration Policy); *id.* at 30 (2011 Tuition Agreement ¶ 10 Arbitration); *id.* at 34 (2016 Arbitration Policy); *id.* at 36 (2016 Tuition Agreement ¶ 10 Arbitration); *id.* at 39 (2017 Arbitration Policy); *id.* at 41 (2017 Tuition Agreement ¶ 10 Arbitration).

[34] Am. Arb. Ass'n Com. Arb. R. R-7(a) (emphasis added). *See also id.* R-7(b) ("The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.").

Thus, there is clear and unmistakable evidence that the parties delegated to the arbitrator questions of arbitrability. *Howsam*, 537 U.S. at 83; *AT&T Techs.*, 475 U.S. at 649. Nor has Cheatham specifically challenged this portion of the arbitration agreements; rather, he seeks to invalidate the entire requirement to arbitrate and the class action waiver.[35] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U]nless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid under [9 U.S.C.] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *Parnell*, 804 F.3d at 1144 ("The Supreme Court has explained that where an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision. Absent such a challenge, the Federal Arbitration Act (FAA) requires that we treat a delegation provision as valid and permit the parties to proceed to arbitration. We hold that when a plaintiff seeks to challenge an arbitration agreement containing a delegation provision, he or she must challenge

---

[35] *See, e.g.*, ECF 2-1, ¶¶ 81–86.

the delegation provision directly.") (citing *Rent-A-Center*, 561 U.S. at 72; 9 U.S.C. § 2). *See also Parnell*, 804 F.3d at 1146–47, 1148.

Further, the Eleventh Circuit has made clear that incorporation of the Rules into an arbitration agreement delegates to the arbitrator questions about the enforceability or validity of the arbitration agreement—as opposed to challenges to the formation of an agreement to arbitrate in the first instance. In *Terminix International Company, LP v. Palmer Ranch L.P.*, 432 F.3d 1327 (11th Cir. 2005), the parties disputed whether Palmer Ranch's numerous claims were required to be arbitrated. Palmer Ranch did not deny that all of its contracts with Terminix contained broad arbitration clauses; it instead asserted (among other things) that the arbitration agreements were unenforceable because arbitration would deprive Palmer Ranch of the ability to obtain punitive damages, treble damages, and injunctive and declaratory relief. *Id.* at 1329. The district court denied Terminix's motion to compel arbitration, holding that the arbitration clauses were unenforceable. *Id.* at 1330–31.

The appellate court acknowledged that:

> [T]he reason a challenge such as the one advanced by Palmer Ranch is ordinarily a matter for the court to decide is that it ultimately goes to the validity of the parties' agreement to arbitrate. That is, Palmer Ranch argues that the whole arbitration clause is unenforceable

> because it contains unenforceable remedial restrictions that are not severable from the remainder. The Supreme Court has recently reaffirmed that the question "whether the parties have a valid arbitration agreement at all" is for the court, not the arbitrator, to decide. This rule makes imminent sense, for in the absence of "clear and unmistakable evidence" that the parties intended the arbitrator to rule on the validity of the arbitration agreement itself, the arbitrator would lack authority to invalidate the very contract from which he derives his authority to begin with.

*Id.* at 1331–32 (citations omitted). However, where the parties to an arbitration agreement "agreed that the arbitrator will answer this question by providing . . . that 'arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association' . . . . the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid." *Id.* at 1332. As a result, Palmer Ranch's arguments against the relevant arbitration clauses were required to be arbitrated. *Id.* at 1333 ("Because the parties have agreed that the arbitrator should decide this ultimate question, there is no reason for us to decide the subsidiary, antecedent questions regarding the validity of the remedial restrictions that Palmer Ranch now challenges. In the ordinary case, we would decide these questions only because they go to the validity of the arbitration clause itself, which is by default an issue for the court, not the arbitrator. Here, however, the parties

have contracted around that default rule, and it is, therefore, unnecessary for us to reach these issues.") (footnote omitted).

In *Fallo v. High-Tech Institute*, 559 F.3d 874, 876 (8th Cir. 2009) — a case even more factually on point than *Terminix* (albeit not controlling) — current and former students of a for-profit vocational school sued the school for breach of the enrollment agreement, as well as in tort and for violation of a Missouri statute. The district court denied the school's second motion to compel arbitration, concluding that it had the authority to determine arbitrability. *Id.* at 877. The school appealed. *Id.* On appeal, the Eighth Circuit concluded that:

> The act of incorporating Rule 7(a) of the AAA [Commercial Arbitration] Rules provides even clearer evidence of the parties' intent to leave the question of arbitrability to the arbitrator than does the act of incorporating Section 35 of the NASD Code because Rule 7(a) expressly gives the arbitrator "the power to rule on his or her own jurisdiction." Consequently, we conclude that the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator.

*Id.* at 878 (citing, *inter alia*, *Terminix*, 432 F.3d at 1332). Accordingly, the appellate court reversed the district court's denial of the school's motion to compel arbitration and directed that the motion be granted.

Similarly here, the clear and unmistakable evidence is that the parties incorporated the Rules into their arbitration agreements and delegated to the arbitrator all questions concerning the validity and enforceability of those agreements. Thus, whether Cheatham has standing to assert that the arbitration agreements are barred by DoE regulations, whether the DoE regulations actually bar enforcement of the arbitration agreements for any reason, and whether Cheatham's putative class claims should be dismissed or can be arbitrated, are all questions the parties agreed to submit to the arbitrator for decision. Accordingly, to the extent Defendants' motion seeks to compel arbitration, the motion is **GRANTED**.

## V.     STAY OF PROCEEDINGS

The Court declines, however, to dismiss this action with prejudice. The Federal Arbitration Act proscribes that federal courts stay an action when the matter is referred to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .

9 U.S.C. § 3. Defendants acknowledge as much, but argue that dismissal is appropriate where all of the issues in the case are being submitted to arbitration.[36] The plain language of the statute provides that cases should be stayed pending arbitration—not dismissed. A stay is particularly appropriate here, where the parties have delegated questions of arbitrability and Cheatham challenges the enforceability of the arbitration agreements. Accordingly, to the extent Defendants' motion seeks dismissal of this action and dismissal of Cheatham's class allegations, the motion is **DENIED** and this action is **STAYED** pending arbitration.

## VI.   CONCLUSION

Defendants' Motion to Compel Individual Arbitration, to Deny Class Arbitration, and to Dismiss Plaintiff's Class Action Claims [ECF 3] is **GRANTED in part** and **DENIED in part**. The parties are **DIRECTED** to arbitrate Plaintiff's Class Action Claims, including all disputes concerning arbitrability. The parties are further **DIRECTED** to file with the Court every 180 days after the date of this

---

[36] ECF 3, at 13–14 (citing *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001); *Halford v. Deer Valley Home Builders, Inc.*, No. 2:07-cv-180, 2007 WL 1229339 (M.D. Ala. April 25, 2007); *Dale v. Comcast Corp.*, 453 F. Supp. 2d 1367, 1378 (N.D. Ga. 2006)). *Dale*, however, was reversed on appeal. 498 F.3d 1216 (11th Cir. 2007).

Order a joint status report concerning whether the arbitration is on-going. The Clerk of Court is **DIRECTED** to resubmit this Order to the undersigned every 180 days. The parties are also **INSTRUCTED** to notify the Court within five business days if they resolve the dispute between them, whether through settlement or otherwise.

Finally, the Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case. This closure is not a dismissal and does not preclude the filing of documents. The case may be re-opened if necessary.

**SO ORDERED** this the 15th day of September 2020.

Steven D. Grimberg
United States District Court Judge